**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GREG INGWALDSON,

      Plaintiff,

v.                                                                  Civ. No. 19-cv-00801 MIS/JFR

RICHARD MOORE, RICHARD MOORE
STATE FARM INSURANCE AGENCY, and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendant State Farm's Motion for Summary Judgment. ECF No. 57. Plaintiff responded, and Defendant replied. ECF Nos. 59, 62. The Court heard oral argument from counsel on February 24, 2022. ECF No. 83 (clerk's minutes). Having considered the parties' submissions, the record, oral argument, and the relevant law, the Court finds it has diversity jurisdiction and will grant the Motion.

## JURISDICTION

Plaintiff filed suit in state court. ECF No. 1-2 at 1. Plaintiff's Amended Complaint[1] names as Defendants: Richard Moore, Richard Moore State Farm Insurance Agency, and State Farm Mutual Automobile Insurance Company ("State Farm"). ECF No. 18. The Amended Complaint alleges that Plaintiff is a citizen of New Mexico; Defendant Richard Moore and Richard Moore State Farm Insurance Agency are citizens of New Mexico; and State Farm is a citizen of a state "other than New Mexico." *Id.* at 1–2.

---

[1] Plaintiff amended his Complaint after this matter was removed to federal court. ECF No. 18. The Amended Complaint made no changes to the parties. *Compare id. with* ECF No. 1-2.

Thus, on the face of Plaintiff's Amended Complaint, the Court does not have diversity jurisdiction. *See* 28 U.S.C. § 1332.

Defendant State Farm removed the action to federal court on August 30, 2019, asserting that the Court has diversity jurisdiction because two of the Defendants were "fraudulently joined." ECF No. 1 at 2–11. "To establish [fraudulent] joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

Here, Defendant State Farm argues that Plaintiff cannot establish a cause of action against the non-diverse Defendants in this case. *See* ECF No. 1 at 3–5. Plaintiff's Amended Complaint outlines seven causes of action, all of which are specifically alleged against Defendant State Farm. ECF No. 18 at 5–11. Outside of the citizenship allegations, the Amended Complaint only mentions Defendants Richard Moore and Richard Moore State Farm Insurance Agency twice, once to explain that the local agent is the entity that sold the insurance policies to Plaintiff and once in the prayer for relief.[2] *Id.* at 4, 12. At oral argument, Plaintiff conceded that he cannot establish a cause of action against the non-diverse Defendants.

---

[2] This is also true of the original Complaint. *See* ECF No. 1-2. Defendants Richard Moore and Richard Moore State Farm Insurance Agency were only mentioned twice, in the citizenship allegations and in the prayer for relief. *See id.* at 4, 12.

Therefore, under the second prong of the *Dutcher* standard, the Court finds that Plaintiff fraudulently joined Defendants Richard Moore and Richard Moore State Farm Insurance Agency. *See* 733 F.3d at 988. Plaintiff has alleged no claims against the New Mexico Defendants, and as such, would not be able to establish a cause of action against either, even in state court. *See id.*; ECF No. 18. Therefore, the Court finds it has diversity jurisdiction under 28 U.S.C. § 1332. Since no claims are maintained against Defendants Richard Moore and Richard Moore State Farm Insurance Agency, and since both parties agreed at oral argument, these Defendants are dismissed from the action.

## BACKGROUND

The evidence shows the following chronology of events: Plaintiff has automobile insurance coverage through Defendant State Farm. *See* ECF No. 57-3. Plaintiff's four policies combine to provide $400,000 in underinsured motorist ("UIM") coverage and $10,000 in medical payments coverage. *See id.* Plaintiff was rear-ended in a traffic accident in September 2013. *See* ECF No. 57-1 at 1–2. Thereafter, Plaintiff received chiropractic treatment from Dr. DelPrete, and in January 2014, Dr. DelPrete issued a final report opining that Plaintiff had reached "maximum medical improvement" and was done with treatment. ECF No. 57-8. Over a year later, in September 2015, Plaintiff visited Dr. Crawford at Lovelace Medical Group for back pain. *See* ECF No. 57-7. In the record of his office visit, under "history of present illness," the notes reflect "onset: 40 years ago," and contain no mention of the September 2013 accident. *Id.* In March 2016, Dr. Crawford performed back surgery on Plaintiff. *See* ECF Nos. 57-6 at 2, 57-10.

Plaintiff submitted various medical bills to Defendant between April 2014, and September 2017. *See* ECF No. 57-9. Defendant paid Plaintiff a total of $10,000 for some

of these bills, which was the medical payment coverage limit on his policy. *See id.* Separately, Plaintiff filed a lawsuit against the at-fault driver, and in June 2016, Defendant consented to a settlement of Plaintiff's claims for the at-fault driver's policy limits of $25,000. ECF No. 57-4.

After Plaintiff's back surgery and after the settlement with the at-fault driver, Plaintiff submitted medical records to Defendant seeking additional payment for claims under his UIM policies. *See* ECF Nos. 57-6 at 2, 57-10, 57-11.[3] In a letter dated February 23, 2018, Defendant refused to offer Plaintiff funds to cover the cost of his back surgery, citing "concerns over causation" due to evidence of preexisting conditions. ECF No. 59-1 at 7. In September 2018, the parties discussed Plaintiff's claims and attempted to reach a "reasonable resolution." ECF No. 57-12. By October 2018, Plaintiff had submitted medical records and bills totaling over $78,000; Defendant had offered Plaintiff $50,000 of UIM coverage; and Plaintiff had countered asking for $295,000. ECF Nos. 57-13, 57-14. By November 2018, Defendant had responded to Plaintiff's counter demand and offered just over $93,000 in UIM coverage. ECF No. 57-15. Plaintiff inquired what Defendant's offer was based on and again asserted that the case was worth significantly more than Defendant's offer. *Id.* At oral argument, Plaintiff asserted that this

---

[3] These citations reference the report from Defendant's medical expert and a letter from Plaintiff's counsel, both of which refer to Plaintiff's medical records. However, the majority of Plaintiff's medical records themselves are not in the record before the Court. Moreover, there is little in the record to show the Court *when* Plaintiff's medical records were disclosed to Defendant. At oral argument, counsel directed the Court to ECF Nos. 27 and 72. These documents are certificates of service for Plaintiff's Expert Witness List—Treating Physicians and Plaintiff's Amended Expert Witness List—Treating Physicians. Neither contain the actual medical records and neither establish when Plaintiff sent the medical records to Defendant before the litigation commenced. Thus, the Court does not have the medical records on which Plaintiff relies, and the Court cannot determine when they were first sent to Defendant.

$93,000 offer was a bad faith offer because it was not at least twice the amount of the contested medical bills ($78,000).

In January 2019, Defendant's medical expert, Dr. Legant, submitted his medical records report to the parties. ECF No. 57-6 at 1–3. Dr. Legant's report indicates that he "agree[s] with Dr. Crawford's note of 9/30/2016, which states that [Plaintiff's] accident caused an exacerbation of his [preexisting] condition." *Id.* at 3. Dr. Legant later explained that exacerbation means "a temporary worsening of a preexisting condition," from which the patient usually recovers to his baseline status. *Id.* at 6. Despite Defendant's assertions to the contrary, Plaintiff maintains that he did not suffer from an ongoing, preexisting back problem prior to the 2013 accident. ECF No. 59-1 at 1–6.[4]

By February 2019, Defendant informed Plaintiff that it had canceled a scheduled mediation because it was "not inclined to increase its offer at this time." ECF No. 57-16. By May 2019, Defendant informed Plaintiff that it would "consider a summary jury trial to speed things along[,] . . . consider a high low agreement," and "work with [Plaintiff] to reach appropriate stipulations wherever possible." ECF No. 57-18. On May 8, 2019, Plaintiff's counsel sent a letter to Defendant demanding payment of Defendant's most recent offer of $93,000. ECF No. 57-19. Instead of tendering payment for its final offer, Defendant sent Plaintiff a check for $50,000, its first offer, which apparently was an undisputed amount. *Id.*; ECF No. 59 at 8, 9. Plaintiff asserts that such payment constitutes unfair claims practices, breach of the covenant of good faith and fair dealing, and bad

---

[4] As an exhibit to his response brief, Plaintiff submitted his own affidavit. ECF No. 59-1 at 1–3. In it, he states that his treating physicians told him that the accident "caused or exacerbated" his back injury such that he needed surgery. However, such testimony is hearsay and fits within no exceptions. *See* Fed. R. Evid. 801–04. Therefore, the Court cannot consider it as to what the treating physicians may have said regarding causation.

faith. ECF No. 57-19. Plaintiff further asserts the same claims because Defendant refused to make any offer for over a year, then made three different offers, and then agreed to mediate but canceled. *Id.* Defendant moves for summary judgment. ECF No. 57.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that threshold is met, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In applying the summary judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (citation omitted).

## DISCUSSION

Plaintiff's Amended Complaint contains seven Counts: Count I, Underinsured Motorist Benefits; Count II, Declaratory Judgment; Count III, Breach of Contract; Count IV, Breach of the Covenant of Good Faith and Fair Dealing; Count V, Insurance Bad Faith; Count VI, Violations of New Mexico Insurance Code; and Count VII, Violations

of New Mexico Unfair Practices Act. ECF No. 18 at 5–11. It also requests punitive damages. *Id.* at 12. Defendant moves for summary judgment on Counts III–VII and on the request for punitive damages. ECF No. 57. The Court will grant the Motion as explained below.

### A. Counts III, IV, and V: Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Bad Faith Insurance Claim

At oral argument, Plaintiff stated that he intends his breach of contract claim to refer to an alleged breach of the implied covenant of good faith and fair dealing, and in his response brief, he combined arguments for Counts IV and V. Therefore, the Court will consider Counts III, IV, and V together.

"There is implied in every insurance policy a duty on the part of the insurance company to deal fairly with the policyholder. Fair dealing means to act honestly and in good faith in the performance of the contract." UJI 13-1701 NMRA. A breach of the covenant of good faith and fair dealing gives rise to a bad faith insurance claim. *See id.* Bad faith exists in the denial of an insured's first party claim where the denial was "frivolous or unfounded." *Chavez v. Chenoweth*, 553 P.2d 703, 709 (N.M. Ct. App. 1976); *Am. Nat. Prop. & Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M. Ct. App. 2012). An "unfounded" or "frivolous" denial means the insurer acted with "reckless disregard" and "utterly fail[ed] to exercise care for the interests of the insured." *Jackson Nat. Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992).

The Uniform Jury Instructions also contain an instruction on bad faith failure to settle, which is distinct from bad faith failure to pay:

> A liability insurance company has a duty to timely investigate and fairly evaluate the claim against its insured, and to accept reasonable settlement offers within policy limits.
>
> An insurance company's failure to conduct a competent investigation of the claim and to honestly and fairly balance its own interests and the interests of the insured in rejecting a settlement offer within policy limits is bad faith. If the company gives equal consideration to its own interests and the interests of the insured and based on honest judgment and adequate information does not settle the claim and proceeds to trial, it has acted in good faith.

UJI 13-1704 NMRA. "To fulfill the duty of giving equal consideration to the interests of the insured and the insurer there must be a fair balancing of these interests." *Lujan v. Gonzales*, 501 P.2d 673, 680 (N.M. Ct. App. 1972), cert. denied, 501 P.2d 553 (N.M. 1972).

Here, Plaintiff has provided no evidence that Defendant acted with "reckless disregard" for Plaintiff's interests. *See Jackson*, 827 P.2d at 134. To the contrary, the evidence in the record shows that Defendant paid Plaintiff's claims under his medical policy up to the limit of $10,000. *See* ECF No. 57-9 at 2. The evidence also shows that Defendant made two settlement offers as a result of its investigation of Plaintiff's UIM claim. *See* ECF Nos. 57-13, 57-15. Plaintiff argues that Defendant breached the covenant of good faith and fair dealing and acted in bad faith because it issued payment of its first settlement offer ($50,000) instead of its final settlement offer ($93,000); refused to make any offer for over a year, then made three different offers; and agreed to mediate but then canceled. ECF No. 59 at 8. At oral argument, Plaintiff asserted that the $93,000 offer was made in bad faith because it was not at least twice the amount of the actual medical bills ($78,000), which were contested. However, Plaintiff has offered no insurance expert to explain why the Court should find that not making an offer of at least twice the disputed

bills is bad faith. In addition, Plaintiff's damages would be offset by the amount of the settlement with the at-fault driver ($25,000). *See, e.g.*, *Friedland v. Indus. Co.*, 566 F.3d 1203, 1209 (10th Cir. 2009) (discussing "one satisfaction rule").

Additionally, at oral argument, Plaintiff maintained that Defendant acted in bad faith by relying on a narrative that Plaintiff had a preexisting back condition that reduces his ability to recover from Defendant in this case. Plaintiff asserts that he has no such longstanding back condition. When the Court pointed out Dr. Crawford's medical record stating that the onset of Plaintiff's back pain was 40 years ago, *see* ECF No. 57-7, Plaintiff argued that Dr. Crawford's note is the only record with such statement in evidence, and Defendant has 18 years of Plaintiff's medical records. Yet, the record contains evidence that Plaintiff visited Dr. DelPrete (his chiropractor) prior to the accident. ECF No. 57-5. The record also contains a January 2014 final report from Dr. DelPrete, stating that Plaintiff had reached "maximum medical improvement" after the accident. ECF Nos. 57-5, 57-8. Furthermore, the evidence shows there was over a year gap in treatment between Dr. DelPrete's final report and Plaintiff's visit to Dr. Crawford. *See* ECF Nos. 57-8, 57-7. More importantly, the only medical opinion as to causation in the record is that of Defendant's medical expert, Dr. Legant, who concludes that the crash did not result in Plaintiff requiring back surgery. *See* ECF No. 57-6. In sum, Plaintiff has no admissible evidence[5] before the Court, and admitted as much at oral argument, that his back surgery was needed as a result of the crash, because no treating records in front of the Court state any such opinion. Thus, Plaintiff has not provided sufficient evidence to show a

---

[5] As mentioned above, Plaintiff's affidavit is not admissible as evidence of the truth of the opinions of his treating physicians. *See* Fed. R. Evid. 801–04.

genuine dispute of material fact as to whether Defendant acted in bad faith in claiming that Plaintiff's preexisting back condition created causation concerns.

Moreover, at oral argument, Plaintiff conceded that nothing in the record before the Court shows *when* Plaintiff's first demand was sent to Defendant. Thus, the record does not support a finding that there were any substantial delays in Defendant's response, because the record does not contain all the correspondence from the parties. Therefore, the Court cannot find a genuine issue of fact as to whether Defendant was unresponsive to Plaintiff's demand in bad faith. Without any records from the treating physicians and evidence as to when the records were sent, the Court cannot conclude the Defendants ignored the records in bad faith.

Furthermore, Plaintiff also conceded that he did not request the reserve number[6] from Defendant. So, the Court cannot find a genuine issue of fact as to whether Defendant's final offer was unfounded based on its internal estimates and thus potentially made in bad faith. *See, e.g.*, Michael Sean Quinn & John D. Moyer, *Preparing for Adjuster Depositions in Bad Faith Cases: The Plaintiff's Objectives*, 16 No. 8/9 Bad Faith L. Rep. 183 (2000) (discussing how "loss reserves" can be used in bad faith insurance litigation). Finally, Plaintiff conceded that nothing in the record shows that Defendant's $93,000 offer was an undisputed amount, such that tendering payment of its first offer of $50,000 might have constituted bad faith. In sum, Plaintiff has not provided "specific facts showing that

---

[6] In general, a loss "reserve number" is an insurance company's estimate of losses that have occurred from a given incident. *See, e.g.*, Michael Sean Quinn & John D. Moyer, *Preparing for Adjuster Depositions in Bad Faith Cases: The Plaintiff's Objectives*, 16 No. 8/9 Bad Faith L. Rep. 183 n.9 (2000).

there is a genuine issue for trial." *See Celotex*, 477 U.S. at 324.[7] The Court finds that there is no evidence in the record to suggest "that a reasonable jury could return a verdict for [Plaintiff]" on the bad faith claims. *See Anderson*, 477 U.S. at 248. Therefore, the Court will grant summary judgment for Defendant on Counts III, IV, and V.

### B. Count VI: Violations of NM Insurance Code for Unfair Claims Practices

In Count VI of the Complaint, Plaintiff alleges violations of New Mexico's Insurance Code and cites to N.M. Stat. Ann. § 59A-16-30 (1978), the provision that provides for a private right of action. ECF No. 18 at 11. Plaintiff alleges that Defendant "engaged in unfair claims handling practices knowingly and with such frequency as to amount to a general business practice," apparently referencing § 59A-16-20. *Id.* This section prohibits insurance companies from engaging in certain "unfair and deceptive practices," which include "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." § 59A-16-20(E). "The insurer's duty is founded upon basic principles of fairness. Any insurer that objectively exercises good faith and fairly attempts to settle its cases on a reasonable basis and in a timely manner need not fear liability under the Code." *Hovet v. Allstate Ins. Co.*, 89 P.3d 69, 78 (N.M. 2004).

Here, Defendant argues that it is entitled to judgment as a matter of law because no evidence suggests that it violated the Code. ECF No. 57 at 11–12. In response, Plaintiff repeats his bad faith arguments and maintains that Defendant engaged in unfair claims

---

[7] As stated above, the party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that threshold is met, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

practices by not making a settlement offer fast enough, then by not increasing its offer, then by canceling two mediations, and finally by issuing payment for the first offer amount instead of the second. ECF No. 59 at 8. However, Plaintiff has provided no evidence that Defendant engaged in unfair claims practices in violation of § 59A-16-20. At oral argument, Plaintiff conceded that he cannot establish that Defendant engaged in unfair claims practices as a general business practice. The Court therefore finds that there is no evidence in the record to suggest "that a reasonable jury could return a verdict for [Plaintiff]," *see Anderson*, 477 U.S. at 248, and will grant summary judgment for Defendant on Count VI.

### C.  Count VII: Violations of NM Unfair Practices Act

Defendant moves for summary judgment on Plaintiff's claims for violations of the Unfair Practices Act. ECF No. 57 at 12. In response, Plaintiff "withdr[ew] [his] claim" for violations of the Unfair Practices Act. ECF No. 59 at 8. In its reply, Defendant noted that "Plaintiff has agreed to withdraw his claim for violations of the Unfair Practice Act (Count VII)." ECF No. 62 at 15. At oral argument, the parties agreed that this claim is withdrawn; therefore, the Court finds that Plaintiff's claims for violations of the Unfair Practices Act (Count VII) are withdrawn.

### D.  Punitive Damages

"[P]unitive damages for breach of an insurance policy requires evidence of bad faith or malice in the insurer's refusal to pay a claim." *Jackson*, 827 P.2d at 134. A punitive damages instruction should be given in every common-law insurance-bad-faith case where the evidence supports a finding, in failure-to-settle cases, "that the insurer's failure

or refusal to settle was based on a dishonest or unfair balancing of interests." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 232 (N.M. 2004).

Here, because the Court will grant summary judgment for Defendant on Plaintiff's bad faith claims (Counts III, IV, and V), Plaintiff's clams for punitive damages also fail as a matter of law. Punitive damages are reserved for bad faith claims, *see Jackson*, 827 P.2d at 134, and no such claims remain here. Therefore, the Court will grant summary judgment in favor of Defendant as to Plaintiff's request for punitive damages.

## CONCLUSION

For the reasons stated above, the Court finds that it has diversity jurisdiction over this matter. Accordingly, all claims against the fraudulently joined Defendants will be dismissed. Moreover, summary judgment will be granted in favor of Defendant State Farm as to Counts III, IV, V, VI, and Plaintiff's claims for punitive damages. Plaintiff's claim in Count VII is withdrawn. Plaintiff's claims in Counts I and II will remain.

**IT IS THEREFORE ORDERED** that all claims against Defendant Richard Moore and Richard Moore State Farm Insurance Agency are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendant State Farm's Motion for Summary Judgment, ECF No. 57, is **GRANTED**.

**IT IS SO ORDERED.**


**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE